1  Max H. Stern (SBN 154424)
   Jessica E. La Londe (SBN 235744)
2  **DUANE MORRIS** LLP
   Spear Tower
3  One Market Plaza, Suite 2200
   San Francisco, CA 94105-1127
4  Telephone: +1 415 957 3000
   Fax: +1 415 957 3001
5  E-mail: mhstern@duanemorris.com
           jelalonde@duanemorris.com
6
   Katherine Nichols (SBN 228893)
7  **DUANE MORRIS** LLP
   865 South Figueroa Street, Suite 3100
8  Los Angeles, CA 90017-5460
   Telephone: +1 213 689 7400
9  Fax: +1 213 689 7401
   E-mail: knichols@duanemorris.com
10
   Attorneys for Defendant
11 INDIAN HARBOR INSURANCE COMPANY

12

13          **IN THE UNITED STATES DISTRICT COURT**

14          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

15

16  PITZER COLLEGE,                     Case No. **CV13-05863**-GW
                                                                      (Ex)
17                  Plaintiff,
                                        **NOTICE OF REMOVAL**
18         v.

19  INDIAN HARBOR INSURANCE
    COMPANY and DOES 1-10,
20                                      Complaint Filed: July 3, 2013
                    Defendant.
21

22

23  TO:  **THE HONORABLE JUDGES OF THE UNITED STATES
         DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA**
24

25         **PLEASE TAKE NOTICE** that, in accordance with 28 U.S.C. §§ 1332, 1441

26  and 1446, and all other applicable law, Defendant Indian Harbor Insurance Company

27  ("Indian Harbor"), through its attorneys, hereby gives notice of removal of Case No.

28

KC066139 GI, pending in the Superior Court of California, County of Los Angeles, to this Court.  In support of removal, Indian Harbor states as follows:

## PROCEDURAL HISTORY AND TIMELINESS OF REMOVAL

1.      On or about July 3, 2013, Plaintiff Pitzer College ("Plaintiff") filed the action entitled *Pitzer College v. Indian Harbor Insurance Company, et al.* in the Superior Court of California, County of Los Angeles, Case No. KC066139 GI (the "Complaint").  See Complaint at **Exhibit A**.

2.      The Complaint was served on Indian Harbor on July 11, 2013 by substituted service.  See Proof of Service at **Exhibit B**.

3.      Indian Harbor filed its Answer on August 9, 2013.  See Answer at **Exhibit C**.

4.      The Complaint names no defendants other than Indian Harbor.

5.      This Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b) because it has been filed within thirty (30) days of service of the Complaint on Indian Harbor.

6.      As required by 28 U.S.C. § 1446(a), a copy of all process, pleadings and orders served on Indian Harbor are attached hereto (see Exhibit A (Complaint), Exhibit B (Proof of Service), and Exhibit C (Answer)).

## BASIS FOR REMOVAL JURISDICTION: DIVERSITY

7.      Removal of the action to this Court is appropriate because this Court has jurisdiction pursuant to 28 U.S.C. § 1332.

8.      Complete diversity of citizenship exists.

9.      Plaintiff alleges, and regulatory filings confirm, it is a corporation organized and existing under the laws of the State of California, is registered to do business in California, and maintains a principal place of business at 1050 N. Mills Avenue, Claremont, California 91711.  (Complaint ¶ 2; *see also* Pitzer College entry on California Secretary of State Site (http://kepler.sos.ca.gov/), which identifies Plaintiff as a California corporation at the Claremont, California address; *see also*

NOTICE OF REMOVAL                              CASE NO. _____

1   generally the Pitzer College website (http://www.pitzer.edu/).)  Plaintiff, therefore, is a

2   citizen of California.

3       10.    Indian Harbor is not a citizen of California.  Indian Harbor: (a) is not

4   incorporated in the State of California; (b) does not have a "main office" in the State

5   of California; and (c) does not have a principal place of business in the State of

6   California.  (Declaration of J. Robert McMahon ("McMahon Dec."), ¶ 3.)  Indian

7   Harbor is incorporated in the State of North Dakota, and its principal place of business

8   is Stamford, Connecticut, where its administrative offices are located.  (Complaint ¶ 3;

9   McMahon Dec. ¶ 3; *see also* Indian Harbor entry on North Dakota Secretary of State

10   Site (https://apps.nd.gov/sc/busnsrch/busnSearch.htm#Search_Results), which

11   identifies Indian Harbor as a North Dakota corporation with its "Principal Office" in

12   Stamford, Connecticut.)

13       11.    The amount in controversy exceeds $75,000, exclusive of interest and

14   costs.  Plaintiff alleges that, pursuant to an insurance policy issued to Plaintiff by

15   Indian Harbor, Indian Harbor is obligated to indemnify Plaintiff for amounts Plaintiff

16   incurred in conducting remediation of lead soil contamination, for which Plaintiff

17   demands approximately $1,900,000 from Indian Harbor.  (See Complaint generally

18   and at ¶ 11; McMahon Dec., ¶ 4.)

19   **VENUE**

20       12.    The United States District Court for the Central District of California is

21   the proper venue for this action under 28 U.S.C. § 1441(a), because the Superior

22   Court of California, County of Los Angeles, where Plaintiff commenced this action, is

23   located in the Central District of California.

24   **NOTICE TO STATE COURT AND TO PLAINTIFF**

25       13.    Contemporaneously with the filing of this Notice of Removal in the

26   United States District Court for the Central District of California, and pursuant to 28

27   U.S.C. § 1446(d), written notice of this filing will be given by the undersigned to

28   Plaintiff's counsel of record, Michael J. Murtaugh and Lawrence J. DiPinto, and a

3

NOTICE OF REMOVAL              CASE NO. _____

1   copy of the Notice of Removal will be filed with the Clerk of the Superior Court of

2   California, County of Los Angeles.

3                                      **CONCLUSION**

4          WHEREFORE, Defendant Indian Harbor Insurance Company respectfully

5   requests that this Notice of Removal be filed and, accordingly, that Case No.

6   KC066139 GI, currently pending in the Superior Court of California, County of Los

7   Angeles, be removed to, and proceed, in this Court.

8

9   Dated:  August 12, 2013                    **DUANE MORRIS LLP**

10

11                                             By: _____
                                                   Max H. Stern
12                                                 Jessica E. La Londe
                                                   Attorneys for Defendant
13                                                 INDIAN HARBOR INSURANCE
                                                   COMPANY
     DM1/4052783
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                              4

NOTICE OF REMOVAL                              CASE NO. _____

# EXHIBIT A

1  Michael J. Murtaugh, Bar No. 57874
   Lawrence J. DiPinto, Bar No. 147320
2  MURTAUGH MEYER NELSON & TREGLIA LLP
   2603 Main Street, 9th Floor
3  Irvine, California 92614-6232
   (949) 794-4000/FAX (949) 794-4099
4  ldipinto@mmnt.com

5  Attorneys for Plaintiff
   PITZER COLLEGE

6

7

8

**ORIGINAL FILED**

**JUL 03 2013**

**LOS ANGELES
SUPERIOR COURT**

### SUPERIOR COURT OF THE STATE OF CALIFORNIA

### COUNTY OF LOS ANGELES, CENTRAL DISTRICT

11

PITZER COLLEGE,

12                Plaintiff,

13        v.

14  INDIAN HARBOR INSURANCE
15  COMPANY and DOES 1-10,

16                Defendant.

17

CASE NO. **KC066139   G1**

**COMPLAINT FOR DECLARATORY
RELIEF AND BREACH OF CONTRACT**

**DEMAND FOR JURY TRIAL**

TRIAL DATE:  None set

18        Plaintiff PITZER COLLEGE ("Plaintiff" or "Pitzer College") alleges as follows:

19                              **DEMAND FOR JURY TRIAL**

20        1.      Plaintiff Pitzer College hereby demands a trial by jury.

21                                    **PARTIES**

22        2.      Plaintiff Pitzer College is a corporation organized and existing under the laws

23  of the State of California, and is registered to do business in California, and maintains a

24  principal place of business at 1050 N. Mills Avenue, Claremont, California, 91711.

25        3.      Defendant INDIAN HARBOR INSURANCE COMPANY ("Indian Harbor" or

26  "Defendant") is a corporation organized and existing under the laws state of North Dakota, and

27  has its principal place of business at 70 Seaview Avenue, Stamford, Connecticut, 06902-6040.

28  Plaintiff is informed and believes and thereon alleges that Indian Harbor was at all relevant

967262                              - 1 -

                                                                    COMPLAINT

1   times an insurance company engaged in the business of writing and selling insurance in the

2   State of California and in the County of Los Angeles.  In addition, Plaintiff is informed and

3   believes and thereon alleges that Indian Harbor has extensive business contacts in California.

4       4.      The true names and capacities of the Doe defendants named herein as Does 1-

5   10 are unknown to Plaintiff who therefore sues such defendants by fictitious names.  Plaintiff

6   will seek leave to amend its complaint to allege the true names and capacities of such Doe

7   defendants when the same are ascertained.    Plaintiff is informed and believes, and thereon

8   alleges, that each of the defendants sued herein as a Doe is and was responsible in some

9   manner  to  provide  insurance  benefits  or  to  provide  fair  and  timely  claim  handling,

10  investigation and payment services for Plaintiff's losses as alleged in this Complaint.    Indian

11  Harbor's failure to provide insurance benefits and to provide fair and timely claim handling,

12  investigation and payment services, directly and proximately caused injury to Plaintiff.  The

13  Doe defendants have a legal interest in the subject matter of this action and dispute the

14  allegations and contentions set forth in this Complaint.  It is appropriate for those defendants

15  to be bound by any adjudication made by the Court in this action.

16      5.      Plaintiff believes that each defendant is and at all relevant times was the agent

17  or employee of each of the remaining defendants and, in committing the acts herein alleged,

18  was acting within the scope of his, her or its authority as agent or employee and with the

19  permission, knowledge and consent of the remaining defendants.    Plaintiff is informed and

20  believes that Indian Harbor was required by law to employ personnel to investigate and adjust

21  the claims tendered to it by Plaintiff that were at all times licensed by the State of California

22  and at all times currently certified by the State of California to perform those claim handling

23  services pursuant to California Insurance Code § 14020 and 10 C.C.R. § 2695.6.   Plaintiff is

24  informed and believes that Indian Harbor employed various investigators and claim handlers

25  to adjust Plaintiff's claim for insurance benefits and that Indian Harbor delegated to such

26  personnel authority as its authorized agents to perform many of Indian Harbor's duties and

27  obligations to Plaintiff that existed at common law and as set forth in California's Fair Claims

28  Settlement Practices Act and Regulations, Insurance Code § 790.03(h) and 10 C.C.R. § 2695.1

1    et seq.

2    ### THE INDIAN HARBOR POLICY

3        6.    Indian Harbor issued a Pollution and Remediation Legal Liability Policy to

4    named insured The Claremont Colleges, and additional named insured, Pitzer College (among

5    others), bearing policy number PEC000350311, with a policy term of July 23, 2010 to July 23,

6    2011 (the "Policy").  The Policy reflects limits of $5,000,000.00 each pollution condition, with

7    an aggregate limit of $5,000,000.00.

8        7.    The Policy provides, among other benefits, indemnification for remediation

9    expenses and legal expenses resulting from a pollution condition occurring at, under, or

10    migrating from the covered locations.

11        8.    At all pertinent times, the required premiums were paid with respect to the

12    Policy, and the Policy was in full force and effect.

13        9.    Plaintiff has performed in a timely manner all conditions and covenants to be

14    performed under the Policy.

15        10.    Plaintiff has attached the most complete and accurate copy of the Policy in its

16    possession to this Complaint, as Exhibit 1.  Plaintiff incorporates the terms of the Policy into

17    these allegations as though the language of the Policy were set forth verbatim herein.  Plaintiff

18    does not have a "certified copy" of the Policy, meaning a policy certified by Indian Harbor to

19    be complete and accurate.

20    ### THE UNDERLYING POLLUTION CONDITION

21        11.    Between January and April of 2011, Plaintiff incurred approximately $1.9

22    million in expenses as a result of legally-required remediation of lead soil contamination (the

23    "Pollution Condition") that was discovered in January of 2011 during the grading for a new

24    $26,500,000 student dormitory.

25        12.    Plaintiff, and those acting on its behalf, took reasonable, necessary and

26    appropriate responsive action, and incurred remediation costs and expenses.

27        13.    In light of the Pollution Condition, Indian Harbor is legally obligated to pay for

28    all associated legal expenses and remediation costs

14.     Plaintiff, and those acting on its behalf, notified Indian Harbor of the Pollution Condition.

15.     Indian Harbor, acting through its authorized agents, refused to pay the costs and expenses that were incurred by Plaintiff in response to the Pollution Condition, claiming that Plaintiff did not comply with the notification provisions of the Policy, Section VII. Specifically, Indian Harbor alleges that Plaintiff did not provide Indian Harbor with notification of the discovery of the Pollution Condition "as soon as practicable" (per paragraph A), and thus denied Indian Harbor an opportunity to withhold consent regarding Plaintiff's remediation decisions (which consent could "not be unreasonably withheld," per paragraph B).

16.     Indian Harbor's refusal to pay the covered costs and expenses incurred by Plaintiff is both unjustified and unreasonable, given that Plaintiff's notification to Indian Harbor was "as soon as practicable," particularly in light of the following facts:

- An organizational division existed between Plaintiff's construction-related representatives (who faced an environmental emergency, as well as a devastating construction delay and disruption claim, and the associated financial peril that would result from the failure to complete the dormitory in time for the 2012-13 academic year) and the risk management representatives (who jointly service the five-college Claremont Consortium, and operate from a different location) – but, any resulting lack of coordination during the crisis was quickly resolved, within the policy period, once the subject policy was located and identified;

- Plaintiff conducted the remediation process appropriately and well, complying with all regulatory requirements, minimizing or avoiding altogether the involved risks, and successfully concluding the process in a cost-effective manner. The costs and expenses incurred by Plaintiff would not have been less, irrespective of the date of tender to Indian Harbor.

- The Indian Harbor policy is a "first party" policy, not a "third party" policy; accordingly, there was no defense to be assumed and directed by Indian

1    Harbor, nor was there a concern regarding potential collusion between Plaintiff

2    and a third party claimant.  Rather, pursuant to Policy section VII (B), Plaintiff

3    had the right to deal with their legal obligations concerning the contamination

4    as it determined appropriate, subject only to Indian Harbor's right to veto an

5    unreasonable course of action.

6    **FIRST CAUSE OF ACTION**

7    **(BY PLAINTIFF AGAINST DEFENDANTS INDIAN HARBOR AND DOES 1-10,**

8    **INCLUSIVE, FOR DECLARATORY RELIEF)**

9          17.    Plaintiff refers to and incorporates by reference herein, paragraphs 1 through

10   16, as though set forth in full in this cause of action.

11         18.    Plaintiff and Indian Harbor stood in a contractual relationship with one another

12   by virtue of the Policy identified herein and by virtue of each and every contractual obligation

13   imposed upon them by the Policy.

14         19.    Plaintiff has performed each obligation, condition and covenant required of it

15   under the Policy.  Based upon the terms of the Policy and the nature of the claim tendered to

16   Indian Harbor, Plaintiff became entitled to the benefits due under the Policy, namely Indian

17   Harbor's prompt agreement to indemnify Plaintiff for the remediation costs and expenses

18   Plaintiff incurred arising from the Pollution Condition.

19         20.    An actual controversy has arisen and now exists between Plaintiff and Indian

20   Harbor concerning their respective rights and obligations under the Policy, in that Plaintiff

21   alleges that, upon tendering the matter to Indian Harbor, Plaintiff requested and is owed

22   indemnity.  Indian Harbor disputes Plaintiff's request, and claims no indemnity is owed.

23         21.    Plaintiff desires a judicial determination and declaration of Plaintiff's and

24   Indian Harbor's respective rights and duties under the contract and specifically that Plaintiff's

25   interpretation of the policy is correct and that Indian Harbor is obligated to indemnify Plaintiff

26   for the remediation costs and expenses Plaintiff incurred arising from the Pollution Condition.

27         ///

28         ///

MURTAUGH MEYER
NELSON & TREGLIA LLP

967262                                    - 5 -

**SECOND CAUSE OF ACTION**

**(BY PLAINTIFF AGAINST DEFENDANTS INDIAN HARBOR AND DOES 1-10, INCLUSIVE, FOR BREACH OF CONTRACT)**

22.     Plaintiff refers to and incorporates by reference herein, paragraphs 1 through 16, as though set forth in full in this cause of action.

23.     Plaintiff and Indian Harbor stood in a contractual relationship with one another by virtue of the Policy identified herein and by virtue of each and every contractual obligation imposed upon them by the Policy.

24.     Plaintiff has performed each obligation, condition and covenant required of it under the Policy.  Based upon the terms of the Policy and the nature of the claim tendered to Indian Harbor, Plaintiff became entitled to the benefits due under the Policy, namely Indian Harbor's prompt agreement to indemnify Plaintiff for the remediation costs and expenses Plaintiff incurred arising from the Pollution Condition.

25.     Plaintiff tendered the matter to Indian Harbor, requesting indemnity.  Indian Harbor denied Plaintiff's indemnity request.   Accordingly, Indian Harbor breached the contract of insurance and the implied covenant of good faith and fair dealing by its failure to indemnify.  The precise amount of damages caused by Indian Harbor's refusal to indemnify will be proved at the time of trial.

26.     In addition, Indian Harbor breached the policy of insurance by violating the following duties and obligations that are incorporated into every insurance contract by operation of California law:  (a)  Failing to engage in a prompt investigation as required by California Fair Claims Settlement Practices Act Regulations 10 C.C.R. § 2695.5(e)(1) and (3) and; (b) Failing to engage in a prompt investigation as required by California Fair Claims Settlement Practices Act Regulations 10 C.C.R. § 2695.5(b).

27.     As a proximate result of the aforementioned breach of contract by the Indian Harbor, Plaintiff has suffered, and will continue to suffer in the future, damages, plus interest, for a total amount to be shown at the time of trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment and relief against Indian Harbor and Does 1-10 as applicable to each cause of action as follows:

1. A declaration of the parties' respective rights and obligations under the Policy issued by Indian Harbor;

2. A declaration that Indian Harbor has an obligation to indemnify Plaintiff for the remediation costs and expenses Plaintiff incurred arising from the Pollution Condition;

3. For contractual benefits due and owing under the Policy according to proof;

4. Damages for failure to provide benefits due and owing under the Policy according to proof;

5. For general and compensatory damages, in an amount to be proven at time of trial;

6. Attorneys' fees and costs incurred to obtain insurance benefits;

7. For prejudgment interest;

8. For costs of suit incurred herein; and

9. For such other and further relief as the Court deems just and proper.

Dated:  June 28, 2013                    MURTAUGH MEYER NELSON & TREGLIA LLP


By: _____
                          Michael J. Murtaugh
                          Lawrence J. DiPinto
                          Attorneys for Plaintiff
                          PITZER COLLEGE

Indian Harbor Insurance Company
## STAMFORD, CONNECTICUT
(A Stock Insurance Company Herein Called the Company)

## POLLUTION AND REMEDIATION LEGAL LIABILITY POLICY

THIS IS A "CLAIMS-MADE AND REPORTED" POLICY.  THIS POLICY REQUIRES THAT A CLAIM BE MADE AGAINST THE INSURED DURING THE POLICY PERIOD AND REPORTED TO THE COMPANY DURING THE POLICY PERIOD OR, WHERE APPLICABLE, THE EXTENDED REPORTING PERIOD.  IN ADDITION, THIS POLICY MAY HAVE PROVISIONS OR REQUIREMENTS DIFFERENT FROM OTHER POLICIES YOU MAY HAVE PURCHASED.  PLEASE READ CAREFULLY.

THIS POLICY CONTAINS PROVISIONS WHICH LIMIT THE AMOUNT OF LEGAL EXPENSE THE COMPANY IS RESPONSIBLE TO PAY.  LEGAL EXPENSE SHALL BE APPLIED AGAINST THE SELF-INSURED RETENTION AMOUNT STATED IN ITEM 4. OF THE DECLARATIONS AND IS SUBJECT TO THE LIMITS OF LIABILITY STATED IN ITEM 3. OF THE DECLARATIONS.

In consideration of the payment of the Policy Premium stated in Item 7. of the Declarations and in reliance upon the statements contained in the Application and any other supplemental materials and information submitted herewith, and subject to all the terms and conditions of this Policy, and the Limits of Liability, and Self-Insured Retention Amount stated in the Declarations, the Company agrees with the INSURED as follows:

### I. INSURING AGREEMENT

**A.**     Coverage A - POLLUTION LEGAL LIABILITY

The Company will pay on behalf of the INSURED for LOSS and related LEGAL EXPENSE resulting from any POLLUTION CONDITION on, at, under or migrating from any COVERED LOCATION, which the INSURED has or will become legally obligated to pay as a result of a CLAIM first made against the INSURED during the POLICY PERIOD and reported to the Company, in writing, by the INSURED, during the POLICY PERIOD or, where applicable, the EXTENDED REPORTING PERIOD.

**B.**     Coverage B - REMEDIATION LEGAL LIABILITY

The Company will pay on behalf of the INSURED for REMEDIATION EXPENSE and related LEGAL EXPENSE resulting from any POLLUTION CONDITION on, at, under or migrating from any COVERED LOCATION:

1. .     for a CLAIM first made against the INSURED during the POLICY PERIOD which the INSURED has or will become legally obligated to pay; or

2.     that is first discovered during the POLICY PERIOD;

provided that the INSURED reports such CLAIM or POLLUTION CONDITION to the Company, in writing, during the POLICY PERIOD or, where applicable, the EXTENDED REPORTING PERIOD.

Page 1
© 2009 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

C.   **Coverage C - CONTINGENT TRANSPORTATION COVERAGE**

The Company will pay on behalf of the INSURED for LOSS, REMEDIATION EXPENSE and related LEGAL EXPENSE resulting from any POLLUTION CONDITION that arises solely during the course of TRANSPORTATION by any CARRIER, which the INSURED has or will become legally obligated to pay as a result of a CLAIM first made against the INSURED during the POLICY PERIOD and reported to the Company, in writing, by the INSURED, during the POLICY PERIOD or, where applicable, the EXTENDED REPORTING PERIOD.

## II. DEFINITIONS

A.   **ADDITIONAL NAMED INSURED** means any person(s) or entity(ies) endorsed onto this Policy as an ADDITIONAL NAMED INSURED, but solely to the extent such person(s) or entity(ies) is liable as a result of the ownership, occupation, development, operation, maintenance, financing or use of any COVERED LOCATION.

B.   **BODILY INJURY** means:

1.   physical injury, sickness, disease or building related illness, including death resulting therefrom, and any accompanying medical or environmental monitoring; and/or

2.   mental anguish, emotional distress, or shock,

caused by any POLLUTION CONDITION.

C.   **CARRIER** means any person(s) or entity(ies), other than the INSURED or any subsidiary or affiliate company of the INSURED, engaged by or on behalf of the INSURED, licensed and in the business of transporting property for hire by land motor vehicle or watercraft.

D.   **CLAIM** means any demand(s), notice(s) or assertion(s) of a legal right alleging liability or responsibility on the part of the INSURED and shall include but not be limited to lawsuit(s), petition(s), order(s) or government and/or regulatory action(s), filed against the INSURED.

E.   **COVERED LOCATION** means any location(s) listed in the Covered Location Schedule endorsed onto this Policy.

F.   **EXTENDED REPORTING PERIOD** means the Automatic Extended Reporting Period or, if applicable, the Optional Extended Reporting Period, as described in Section V. EXTENDED REPORTING PERIOD of this Policy.

G.   **FIRST NAMED INSURED** means the person or entity stated in Item 1 of the Declarations.

H.   **INSURED** means the FIRST NAMED INSURED, any ADDITIONAL NAMED INSURED endorsed onto this Policy, and any present or former director, officer, partner, employee, leased worker or temporary worker thereof while acting within the course and scope of his/her duties as such.

I.   **LEGAL EXPENSE** means legal costs, charges and expenses incurred in the investigation, adjustment or defense of any CLAIM for LOSS or REMEDIATION EXPENSE, or in connection with the payment of any REMEDIATION EXPENSE as applicable, and shall include any necessary expert fees paid to experts retained by defense counsel.

© 2009 X.L. America, Inc. All Rights Reserved.
May not be copied without permission.

LEGAL EXPENSE does not include the time and expense incurred by the INSURED in assisting in the investigation or resolution of a CLAIM or in connection with REMEDIATION EXPENSE, including but not limited to the costs of the INSURED'S in-house counsel, salary charges of regular employees or officials of the INSURED, and fees and expenses of supervisory counsel retained by the INSURED.

J.    LOSS means monetary judgment, award or settlement of compensatory damages as well as related punitive, exemplary or multiplied damages where insurance coverage is allowable by law arising from:

    1.    BODILY INJURY; and/or

    2.    PROPERTY DAMAGE.

K.    LOW-LEVEL RADIOACTIVE WASTE AND MATERIAL means:

    1.    Waste as defined in Title 10 Code of Federal Regulations, Part 61.2; and/or

    2.    material regulated by the United States Nuclear Regulatory Commission or an Agreement State under a Type A, B or C Specific License of Broad Scope as defined in Title 10 Code of Federal Regulations, Part 33.11.

L.    MOLD MATTER means mold, mildew or any type or form of fungus, including any mycotoxins, spores, or byproducts produced or released by fungi.

M.    MOLD MATTER REMEDIATION STANDARD means standards for the investigation and abatement of MOLD MATTER imposed by a Federal, State, Local or Provincial governmental authority pursuant to a law or regulation governing the investigation and abatement of MOLD MATTER. If no standards have been imposed by such authority, then the standards for investigation and abatement shall be those necessary to protect human health at the COVERED LOCATION, as determined in consultation with a MOLD MATTER PROFESSIONAL, and shall be no less than those remediation activities recommended by the New York City Department of Health & Mental Hygiene Guidelines on Assessment and Remediation of Fungi in Indoor Environments ("NYC Guidelines"), or any subsequent amendments thereof. All of these standards shall take into consideration the use of the COVERED LOCATION on the date the COVERED LOCATION was endorsed onto this Policy.

N.    MOLD MATTER PROFESSIONAL means a Certified Industrial Hygienist, or similarly qualified health and safety professional experienced in performing mold investigation and remediation, retained by or with the prior written consent of the Company.

O.    NATURAL RESOURCE DAMAGE means physical injury to or destruction of, as well as the assessment of such injury or destruction, including the resulting loss of value of land, fish, wildlife, biota, air, water, groundwater, drinking water supplies, and other such resources belonging to, held in trust by, appertaining to, or otherwise controlled by the United States (including the resources of the fishery conservation zone established by the Magnuson-Stevens Fishery Conservation and Management Act 16 U.S.C. 1801 et. seq.), any State, Local or Provincial government, any foreign government, any Native American tribe or, if such resources are subject to a trust restriction on alienation, any member of a Native American tribe.

P.    POLICY PERIOD means the period stated in Item 2. of the Declarations, or any shorter period arising as a result of cancellation.

Q.    POLLUTANTS means any solid, liquid, gaseous or thermal pollutant, irritant or contaminant including but not limited to smoke, vapors, odors, soot, fumes, acids, alkalis, toxic chemicals, hazardous substances, waste materials, including medical, infectious and pathological wastes, electromagnetic fields, LOW-LEVEL RADIOACTIVE WASTE AND MATERIAL, and MOLD MATTER.

PARL6CP 0909

Page 3

© 2009 X.L. America, Inc. All Rights Reserved.
May not be copied without permission.

JVAL 07/28/2011

R.    **POLLUTION CONDITION** means:

    1.    the discharge, dispersal, release, seepage, migration, or escape of POLLUTANTS into or upon land, or structures thereupon, the atmosphere, or any watercourse or body of water including groundwater;

    2.    the presence of any uncontrolled or uncontained POLLUTANTS into land, the atmosphere, or any watercourse or body of water including groundwater; or

    3.    the presence of MOLD MATTER on buildings or structures.

S.    **PROPERTY DAMAGE** means:

    1.    physical injury to or destruction of tangible property, including the resulting loss of use thereof, and including the personal property of third parties;

    2.    loss of use of such property that has not been physically injured or destroyed;

    3.    diminished third party property value; and/or

    4.    NATURAL RESOURCE DAMAGE,

caused by any POLLUTION CONDITION.

PROPERTY DAMAGE does not include REMEDIATION EXPENSE.

T.    **REMEDIATION EXPENSE** means expenses caused by a POLLUTION CONDITION and incurred to investigate, assess, remove, dispose of, abate, contain, treat or neutralize a POLLUTION CONDITION, to the extent required by:

    1.    Federal, State, Local or Provincial Laws, Regulations or Statutes, or any subsequent amendments thereof, or MOLD MATTER REMEDIATION STANDARDS, enacted to address a POLLUTION CONDITION, including any individual or entity acting under the authority thereof; and/or

    2.    a legally executed state voluntary program governing the cleanup of a POLLUTION CONDITION.

REMEDIATION EXPENSE shall also include any associated (i) monitoring and testing costs, or (ii) punitive, exemplary or multiplied damages, where insurable by law.  REMEDIATION EXPENSE shall also include RESTORATION COSTS.

U.    **RESTORATION COSTS** means reasonable and necessary costs incurred by the INSURED to restore, repair or replace real or personal property to substantially the same condition it was in prior to being damaged during work performed in the course of incurring REMEDIATION EXPENSE.

However, these costs shall not exceed the actual cash value of such real or personal property immediately prior to incurring the REMEDIATION EXPENSE or include costs associated with improvements or betterments.   Actual cash value is defined as the cost to replace such real or personal property, immediately prior to incurring the REMEDIATION EXPENSE, minus the accumulated depreciation of the real or personal property.

© 2009 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

JVAL  07/28/2011

V.    RESPONSIBLE INSURED means:

    1.    any officer, director, or partner of the INSURED;

    2.    any person(s) or entity(ies) authorized by the INSURED to act for or in place of the INSURED; and/or

    3.    any employee of the INSURED responsible for the environmental or health and safety affairs of the INSURED.

W.    TRANSPORTATION means:

    1.    **Out-Bound** - the movement by a CARRIER of the INSURED'S product or waste generated by the INSURED, after a CARRIER crosses the legal boundary of a COVERED LOCATION until the INSURED'S waste or product is delivered or unloaded by the CARRIER; and/or

    2.    **In-Bound** - the loading and movement by a CARRIER of material, from a location other than a COVERED LOCATION, until the CARRIER crosses the legal boundary of a COVERED LOCATION.

X.    UNDERGROUND STORAGE TANK(S) means any stationary container or vessel, including the associated piping connected thereto, which is ten percent (10%) or more beneath the surface of the ground and is:  (i) constructed primarily of non-earthen materials; and (ii) designed to contain any substance.

## III. TERRITORY

A CLAIM must be made or brought in the United States, its territories or possessions or in Canada.

This Policy shall not apply to any risk which would be in violation of the laws of the United States or Canada, as applicable, including, but not limited to, United States economic or trade sanction laws or export control laws administered by the United States Treasury, State, and Commerce Departments (e.g. the economic and trade sanctions administered by the United States Treasury Office of Foreign Assets Control).

## IV. EXCLUSIONS

This Policy does not apply to LOSS, REMEDIATION EXPENSE, LEGAL EXPENSE or any other coverages afforded by endorsement attached to this Policy:

1.    **Non-Disclosed Conditions**
    arising from any POLLUTION CONDITION existing prior to the inception date of this Policy, and reported to or known by a RESPONSIBLE INSURED, which was not disclosed in writing to the Company in the Application or related materials prior to the inception date of this Policy or prior to the COVERED LOCATION being endorsed onto this Policy.  Any POLLUTION CONDITION disclosed in writing to the Company and not otherwise excluded under this Policy is deemed to be first discovered on the date a COVERED LOCATION is endorsed onto this Policy.

2.    **Fines/Penalties/Assessments**
    based upon or arising out of any fines, penalties or assessments.

    This exclusion does not apply to punitive, exemplary or multiplied damages.

© 2009 X.L. America, Inc. All Rights Reserved.
May not be copied without permission.

JVAL 07/28/2011

3.  **Employer's Liability/Workers' Compensation**
    based upon or arising out of injury to:

    a.  any employee, director, officer, partner, leased worker or temporary worker of the INSURED if such injury occurs during and in the course of said employment, or during the performance of duties related to the conduct of the INSURED'S business, or arising out of any Workers' Compensation, unemployment compensation or disability benefits law or similar law; and

    b.  the spouse, child, parent, brother or sister of such employee, director, officer, partner, leased worker or temporary worker of the INSURED as a consequence of Item a. above.

4.  **Contractual Liability**
    based upon or arising as a result of liability of others assumed by the INSURED in any contract or agreement unless the liability would exist in the absence of a contract or agreement.

    Only as it applies to coverages offered under this Policy, this exclusion does not apply to liability of others assumed by the INSURED in contracts listed in the Insured Contract(s) Schedule endorsed onto this Policy.

5.  **Insured's Property/Bailee Liability**
    with respect to PROPERTY DAMAGE only, to property owned, leased or operated by, or in the care, custody or control of the INSURED, even if such PROPERTY DAMAGE is incurred to avoid or mitigate LOSS or REMEDIATION EXPENSE which may be covered under this Policy.

    This exclusion does not apply to RESTORATION COSTS or NATURAL RESOURCE DAMAGE.

6.  **New Pollution Conditions at Divested Property**
    based upon or arising from any POLLUTION CONDITION on, at, under or migrating from any COVERED LOCATION, where the actual discharge, dispersal, release, seepage, migration or escape of POLLUTANTS commenced subsequent to the time such COVERED LOCATION was sold, given away, or abandoned by the INSURED, or condemned.

7.  **Radioactive / Nuclear Material**
    based upon or arising out of:

    a.  ionizing radiations or contamination by radioactivity from any nuclear fuel or from any nuclear waste from the processing or reaction of nuclear fuel;

    b.  the radioactive, toxic, explosive or other hazardous properties of any explosive nuclear assembly or nuclear component thereof;

    c.  the existence, required removal or abatement of Naturally Occurring Radioactive Material, including but not limited to radon;

    d.  high-level radioactive waste (spent nuclear fuel or the highly radioactive waste produced if spent fuel is reprocessed), uranium milling residues and waste with greater than specified quantities of elements heavier than uranium; or

    e.  mixed Waste as defined in Title 40 Code of Federal Regulations, Part 266.210; however, this clause e. does not apply to Mixed Waste that contains Waste as defined in Title 10 Code of Federal Regulations, Part 61.2,

    including, but not limited to the actual, alleged or threatened exposure of any person(s) or property to any such matter.

PARL6CP 0909

© 2009 X.L. America, Inc. All Rights Reserved.
May not be copied without permission.

JVAL 07/28/2011

8.     **Products Liability**
       based upon or arising out of goods or products manufactured, sold, handled, distributed, altered or repaired by the INSURED or by others trading under the INSURED's name including any container thereof, any failure to warn, or any reliance upon a representation or warranty made at any time with respect thereto, but only if the POLLUTION CONDITION took place away from a COVERED LOCATION and after physical possession of such goods or products has been relinquished to others.

       This exclusion does not apply to <u>Coverage C – CONTINGENT TRANSPORTATION COVERAGE</u>, as stated in Section I. INSURING AGREEMENT of this Policy.

9.     **Non-Compliance**
       arising from any POLLUTION CONDITION that results from the intentional disregard of, or the deliberate, willful or dishonest non-compliance by a RESPONSIBLE INSURED with any statute, regulation, ordinance, order, notice letter or instruction from, by or on behalf of any governmental body or entity.

10.    **Hostile Acts**
       based upon or arising out of any consequence, whether direct or indirect, of war, invasion, act of foreign enemy, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection or military or usurped power.

11.    **Lead-Based Paint and Asbestos**
       based upon or arising out of the existence, required removal or abatement of lead-based paint or asbestos, in any form, in any building or structure, including but not limited to products containing asbestos, asbestos fibers, asbestos dust, and asbestos containing materials.

12.    **Underground Storage Tank(s)**
       based upon or arising out of the existence of any UNDERGROUND STORAGE TANK(S) on, at or under a COVERED LOCATION. This exclusion does not apply to UNDERGROUND STORAGE TANK(S):

       a.      which are closed, abandoned-in-place or removed prior to the inception date of this Policy, in accordance with all applicable Federal, State, Local or Provincial Regulations in effect at the time of closure, abandonment or removal;

       b.      listed in the Underground Storage Tank(s) Schedule endorsed onto this Policy, if any;

       c.      the existence of which is unknown by a RESPONSIBLE INSURED as of the inception date of this Policy;

       d.      flow-through process tanks, including oil/water separators; or

       e.      storage tank(s) situated in an underground area (such as a basement, cellar, mine shaft or tunnel) if the storage tank is situated upon or above the surface of the floor.

13.    **Insured vs. Insured**
       based upon or arising from a CLAIM by one INSURED against another INSURED.

14.    **Material Change in Use or Operations**
       based upon or arising out of a material change in the use of, or a material change in the operations at, any COVERED LOCATION from those set forth by the INSURED in the Application or related materials as of the inception date of this Policy.

© 2009 X.L. America, Inc. All Rights Reserved.
May not be copied without permission.

JVAL 07/28/2011

15. **Retroactive Date**
based upon or arising out of any POLLUTION CONDITION that commenced prior to the Retroactive Date stated in Item 5. of the Declarations which includes any dispersal, migration or further movement of the aforementioned POLLUTION CONDITION on or after the Retroactive Date stated in Item 5. of the Declarations.

16. **Reverse Retroactive Date**
based upon or arising out of any POLLUTION CONDITION that commenced subsequent to the Reverse Retroactive Date stated in Item 6. of the Declarations.

17. **Communicable Diseases**
based upon or arising out of the exposure to infected individuals or animals, or contact with bodily fluids of infected individuals or animals.

## V. EXTENDED REPORTING PERIOD

A. **Automatic Extended Reporting Period:**

The INSURED shall be entitled to a ninety (90) day Automatic Extended Reporting Period for no additional premium, commencing on the last day of the POLICY PERIOD, subject to the following terms and conditions:

1. The Automatic Extended Reporting Period shall apply to a CLAIM first made against the INSURED during the POLICY PERIOD and reported to the Company, in writing, by the INSURED during the Automatic Extended Reporting Period and otherwise covered by this Policy.

2. The Automatic Extended Reporting Period shall also apply to a CLAIM first made against the INSURED during the Automatic Extended Reporting Period, resulting from any POLLUTION CONDITION first discovered and reported to the Company, in writing, by the INSURED during the POLICY PERIOD and otherwise covered by this Policy. In this case, the CLAIM shall be deemed to have been made against the INSURED on the last day of the POLICY PERIOD.

3. The Automatic Extended Reporting Period shall also apply to any POLLUTION CONDITION first discovered by the INSURED during the POLICY PERIOD and reported to the Company, in writing, by the INSURED within the Automatic Extended Reporting Period and otherwise covered under this Policy.

The ninety (90) day Automatic Extended Reporting Period does not apply where:

1. this Policy is terminated for fraud, misrepresentation or non-payment of premium as described in Section IX. CONDITIONS; B. Cancellation, Items 2.a. and 2.b.; or

2. the INSURED has purchased other insurance to replace this Policy, which provides coverage for a CLAIM and/or POLLUTION CONDITION.

B. **Optional Extended Reporting Period:**

The FIRST NAMED INSURED shall be entitled to purchase an Optional Extended Reporting Period in the event this Policy is non-renewed, subject to the following terms and conditions:

1. The Optional Extended Reporting Period shall become effective upon payment of an additional premium of not more than one hundred percent (100%) of the full Policy Premium. The Optional Extended Reporting Period shall be effective for three (3) consecutive three-hundred and sixty-five (365) day periods commencing on the last day of the POLICY PERIOD. The FIRST NAMED

PARL6CP 0909

© 2009 X.L. America, Inc. All Rights Reserved.
May not be copied without permission.

JVAL 07/28/2011

INSURED must indicate its intention, in writing, to purchase this Optional Extended Reporting Period within thirty (30) days from the last day of the POLICY PERIOD. The Automatic Extended Reporting Period of ninety (90) days will be merged into this period and is not in addition to this period.

2.      The Optional Extended Reporting Period shall only apply to a CLAIM first made against the INSURED during the Optional Extended Reporting Period, resulting from any POLLUTION CONDITION first discovered and reported to the Company, in writing, by the INSURED, during the POLICY PERIOD and otherwise covered by this Policy.

The Optional Extended Reporting Period does not apply where:

1.      this Policy is terminated for fraud, misrepresentation or non-payment of premium as described in Section IX. CONDITIONS, B. Cancellation, Items 2.a. and 2.b.; or

2.      the INSURED has purchased other insurance to replace this Policy, which provides coverage for a CLAIM and/or POLLUTION CONDITION.

It is a condition precedent to the operation of the rights granted under Item B. above that payment of the appropriate premium shall be made not later than thirty (30) days after expiration of this Policy in the case of non-renewal.

For purposes of Item B. Optional Extended Reporting Period as referenced above, the quotation of different terms and conditions by the Company shall not be construed as a non-renewal of this Policy.

## VI. LIMITS OF LIABILITY AND SELF-INSURED RETENTION

A.      The Company will pay one hundred percent (100%) of all covered LOSS, REMEDIATION EXPENSE, LEGAL EXPENSE and any other coverages afforded by endorsement attached to this Policy in excess of the applicable Self-Insured Retention Amount stated in Item 4. of the Declarations and subject to the Limits of Liability stated in Item 3. of the Declarations and the other terms and conditions of this Policy.

B.      The Self-Insured Retention Amount is borne by the INSURED and is not to be insured unless the Company has expressed its prior consent in writing to the FIRST NAMED INSURED. The applicable Self-Insured Retention Amount stated Item 4. of the Declarations shall apply.

C.      All LOSS, REMEDIATION EXPENSE, LEGAL EXPENSE and any other coverages afforded by endorsement attached to this Policy arising out of the same or related POLLUTION CONDITION at any one COVERED LOCATION shall be considered a single POLLUTION CONDITION and shall be subject to the applicable Limits of Liability stated in Item 3a. of the Declarations and the Self-Insured Retention Amount stated in Item 4. of the Declarations.

D.      All LOSS, REMEDIATION EXPENSE, LEGAL EXPENSE or any other coverages afforded by endorsement attached to this Policy during the POLICY PERIOD or, where applicable, the EXTENDED REPORTING PERIOD shall not exceed the Limits of Liability stated in Item 3b. of the Declarations.

E.      Any LOSS, REMEDIATION EXPENSE, LEGAL EXPENSE and any other coverages afforded by endorsement incurred and reported to the Company, in writing, over more than one policy period, and resulting from the same or related POLLUTION CONDITION, shall be considered a single POLLUTION CONDITION. The LOSS, REMEDIATION EXPENSE, LEGAL EXPENSE and any other coverages afforded by endorsement attached to this Policy will be subject to the same Limits of Liability and the Self-Insured Retention Amount in effect at the time the POLLUTION CONDITION was first reported to the Company, in writing, by the INSURED, during the POLICY PERIOD or, where applicable, the EXTENDED REPORTING PERIOD.

PARL6CP 0909

© 2009 X.L. America, Inc. All Rights Reserved.
May not be copied without permission.

JVAL 07/28/2011

### VII. REPORTING, DEFENSE, SETTLEMENT AND COOPERATION

**A.**   As a condition precedent to the coverage hereunder, in the event any CLAIM is made against the INSURED for LOSS or REMEDIATION EXPENSE, or any POLLUTION CONDITION is first discovered by the INSURED that results in a LOSS or REMEDIATION EXPENSE:

   1.   The INSURED shall forward to the Company or to any of its authorized agents every demand, notice, summons, order or other process received by the INSURED or the INSURED's representative as soon as practicable; and

   2.   The INSURED shall provide to the Company, whether orally or in writing, notice of the particulars with respect to the time, place and circumstances thereof, along with the names and addresses of the injured and of available witnesses. In the event of oral notice, the INSURED agrees to furnish to the Company a written report as soon as practicable.

   It is further agreed, that the INSURED shall cooperate with the Company and upon the Company's request shall submit to examination by a representative of the Company, under oath if required, and shall attend hearings, depositions and trials and shall assist in effecting settlement, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits, as well as in the investigation and/or defense thereof, all without charge to the Company. The INSURED shall further cooperate with the Company and do whatever is necessary to secure and effect any rights of indemnity, contribution or apportionment which the INSURED may have.

**B.**   No costs, charges or expenses shall be incurred, nor payments made, obligations assumed or remediation commenced without the Company's written consent which shall not be unreasonably withheld. This provision does not apply to costs incurred by the INSURED on an emergency basis, where any delay on the part of the INSURED would cause injury to persons or damage to property, or increase significantly the cost of responding to any POLLUTION CONDITION. If such emergency occurs, the INSURED shall notify the Company immediately thereafter.

**C.**   The Company shall have the right and the duty to defend an INSURED against any CLAIM seeking damages for a LOSS or for REMEDIATION EXPENSE. The Company will have no duty to defend the INSURED against any CLAIM for LOSS or for REMEDIATION EXPENSE to which this Policy does not apply.

**D.**   The Company shall have the right and the duty to assume the investigation, adjustment or defense of any CLAIM. In case of the exercise of this right, the INSURED, on demand of the Company, shall promptly reimburse the Company for any element of LOSS, REMEDIATION EXPENSE, LEGAL EXPENSE or any other coverages afforded by endorsement falling within the Self-Insured Retention Amount stated in Item 4. of the Declarations.

   The INSURED shall not admit liability or settle any CLAIM without the Company's consent. If the Company recommends a settlement of any CLAIM:

   1.   for an amount within the Self-Insured Retention Amount and the INSURED refuses such settlement, the Company shall not be liable for any LOSS, REMEDIATION EXPENSE, LEGAL EXPENSE and any other coverages afforded by endorsement in excess of the Self-Insured Retention Amount; or



Page 10
© 2009 X.L. America, Inc. All Rights Reserved.
May not be copied without permission.

2.   for a total amount in excess of the Self-Insured Retention Amount and the INSURED refuses such settlement, the Company's liability for LOSS, REMEDIATION EXPENSE, LEGAL EXPENSE and any other coverages afforded by endorsement shall be limited to that portion of the recommended settlement and the costs, charges and expenses as of the date of the INSURED's refusal which exceed the Self-Insured Retention Amount but fall within the Limits of Liability.

E.   If a POLLUTION CONDITION is first discovered by the INSURED during the POLICY PERIOD and reported in writing to the Company during the POLICY PERIOD or, where applicable, the EXTENDED REPORTING PERIOD, and a CLAIM associated with such POLLUTION CONDITION is made against the INSURED and reported to the Company after the expiration of this Policy, such CLAIM shall be deemed to have been first made and reported on the last day of the POLICY PERIOD in which the POLLUTION CONDITION is first discovered, provided that the INSURED has maintained an equivalent policy with the Company on a continuous uninterrupted basis and the CLAIM is made against the INSURED and reported to the Company prior to the cancellation or expiration of such subsequent policy. It is further agreed that coverage for such CLAIM will not be provided under any subsequent policy issued by the Company.

F.   The Company shall have the right to designate legal counsel for the investigation, adjustment and defense of a CLAIM. The Company shall consult with the INSURED in conjunction with the selection of counsel.

## VIII. TRANSFER OF LEGAL DEFENSE DUTIES

A.   If the Company believes that the Limits of Liability stated in Item 3. of the Declarations has been or soon will be exhausted in defending a CLAIM or that the Company has paid out or will soon pay out the Aggregate Liability stated in Item 3.b. of the Declarations, the Company will so notify the FIRST NAMED INSURED in writing as soon as possible. The Company will advise that its duty to defend a CLAIM seeking damages within those Limits of Liability has terminated, subject to payment of the Limits of Liability, and that it will have no duty to defend or indemnify the INSURED for any CLAIM for which notice is given after the date it sends out such notice. The Company will take immediate and appropriate steps to transfer control of any existing defense prior to exhaustion of the limits to the FIRST NAMED INSURED. The FIRST NAMED INSURED agrees to reimburse the Company for any costs which the Company bears in connection with the transfer of the defense.

B.   The Company will take appropriate steps necessary to defend the CLAIM during the transfer of the defense and avoid any unfavorable legal action provided that the FIRST NAMED INSURED cooperates in the transfer of the duties of the defense.

C.   The exhaustion of the applicable Limits of Liability by the payment of LOSS, REMEDIATION EXPENSE, LEGAL EXPENSE and any other coverages afforded by endorsement will not be affected by the Company's failure to comply with any of the provisions of this section.

## IX. CONDITIONS

A.   **Inspection and Audit** -- The Company shall be permitted but not obligated to inspect and monitor on a continuing basis the INSURED'S property or operations at any COVERED LOCATION, at any time. Neither the Company's right to make inspections and monitor nor the actual undertaking thereof nor any report thereon shall constitute an undertaking, on behalf of the INSURED or others, to determine or warrant that property or operations are safe, healthful or conform to acceptable engineering practice or are in compliance with any law, rule or regulation. Access for the inspection and audit may be coordinated through the broker or agent of the FIRST NAMED INSURED.

© 2009 X.L. America, Inc. All Rights Reserved.
May not be copied without permission.

B.  **Cancellation** — The INSURED and the Company agree to the following with regard to cancellation:

1.  **Cancellation by the FIRST NAMED INSURED** — This Policy may be canceled by the FIRST NAMED INSURED by surrender thereof to the Company or any of its authorized agents or by mailing to the Company written notice stating when thereafter the cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice of cancellation. The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the POLICY PERIOD. Confirmed delivery of such written notice by the FIRST NAMED INSURED shall be equivalent to mailing.

    The Minimum Earned Premium for this Policy will be the percentage stated in Item 8. of the Declarations of the total premium for this Policy. The FIRST NAMED INSURED is not entitled to any return of the Minimum Earned Premium upon cancellation by the FIRST NAMED INSURED.

    If the Minimum Earned Premium is less than one hundred percent (100%), and the FIRST NAMED INSURED cancels this Policy, then the amount of premium returnable after the minimum premium earned is retained by the Company shall be computed in accordance with the customary short rate table and procedure.

2.  **Cancellation by the Company** — This Policy may be canceled by the Company by mailing to the FIRST NAMED INSURED at the address shown in Item 1. of the Declarations, written notice stating when not less than sixty (60) days [ten (10) days for non-payment of premium] thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice of cancellation. The effective date and hour of cancellation stated in the notice shall become the end of the POLICY PERIOD.

    The Company may cancel this Policy at any time, but only for the following reasons:

    a.   the INSURED has made a material misrepresentation which affects the Company's assessment of the risk of insuring any COVERED LOCATION; or

    b.   the INSURED breaches or fails to comply with Policy terms, conditions, contractual duties, or any of its obligations under this Policy or at law; or

    c.   the INSURED fails to pay the premium or fails to pay any Deductible or the Self-Insured Retention Amount for this Policy.

    If the Company cancels this Policy, then the amount of premium returnable to the INSURED shall be computed pro rata and no minimum earned premium shall apply.

    In the event of cancellation of this Policy by the Company from Item b. above, the INSURED shall have sixty (60) days from the date of notice to remedy such breach or failure to comply that is the cause for cancellation. If such remedy is satisfactory to the Company, in its sole discretion, during the applicable notice period, the Company will rescind the Notice of Cancellation with a written confirmation to the FIRST NAMED INSURED that the Policy shall remain in place.

    With regard to both Items 1. and 2. above:

    1.   The premium adjustment may be made either at the time cancellation is affected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation; and

PARL6CP 0909

© 2009 X.L. America, Inc. All Rights Reserved.
May not be copied without permission.

JVAL 07/28/2011

2.  If a CLAIM is made against the INSURED, and the POLLUTION CONDITION related to such CLAIM is discovered or coverage is requested from the Company by the INSURED during the POLICY PERIOD or, where applicable, the EXTENDED REPORTING PERIOD, then the total premium shall be considered one hundred percent (100%) earned, and the INSURED is not entitled to any return of premium upon cancellation.

C.  **Declarations and Representations** -- By acceptance of this Policy, the INSURED agrees that the statements contained in the Application and any other supplemental materials and information submitted herewith are the INSURED's agreements and representations, that they shall be deemed material, that this Policy is issued in reliance upon the truth of such representations and that this Policy embodies all agreements existing between the INSURED and the Company or any of its agents relating to this insurance.

D.  **Action Against Company** -- No action shall lie against the Company unless, as a condition precedent thereto:

1.  the INSURED has fully complied with all of the terms of this Policy; and

2.  the amount the INSURED is obligated to pay has been finally determined either by judgment against the INSURED after actual trial or by written agreement of the INSURED, the claimant and the Company.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this Policy to the extent of the insurance afforded by this Policy.  No person or organization shall have any right under this Policy to join the Company as a party to any action against the INSURED to determine the INSURED's liability, nor shall the Company be impleaded by the INSURED or its legal representative.  Bankruptcy or insolvency of the INSURED or of the INSURED's estate shall not relieve the Company of any of its obligations hereunder.

E.  **Assignment** -- This Policy shall be void as to the assignee or transferee, if assigned or transferred without written consent of the Company.  Such consent shall not be unreasonably withheld or delayed by the Company.

F.  **Subrogation** -- In the event of any payment under this Policy, the Company shall be subrogated to all the INSURED'S rights of recovery against any person or organization and the INSURED shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights.  The INSURED shall do nothing to prejudice such rights.

G.  **Changes** -- Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this Policy or estop the Company from asserting any right under the terms of this Policy; nor shall the terms of this Policy be waived or changed, except by endorsement issued to form a part of this Policy.

H.  **Sole Agent** -- The FIRST NAMED INSURED stated in Item 1. of the Declarations shall act on behalf of all INSUREDS for the payment or return of premium, receipt and acceptance of any endorsement issued to form a part of this Policy, giving and receiving notice of cancellation or non-renewal and the exercise of the rights provided in Section V. EXTENDED REPORTING PERIOD, Item B. Optional Extended Reporting Period.

© 2009 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

I.  **Other Insurance** — Subject to Section VI. LIMITS OF LIABILITY AND SELF-INSURED RETENTION, this insurance shall be in excess of the Self-Insured Retention Amount stated in Item 4. of the Declarations and any other valid and collectible insurance available to the INSURED, whether such other insurance is stated to be primary, pro rata, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the Limits of Liability provided in this Policy.

J.  **Headings** — The descriptions in the headings of this Policy are solely for convenience and form no part of this Policy terms and conditions.

K.  **Jurisdiction and Venue** — It is agreed that in the event of the failure of the Company to pay any amount claimed to be due hereunder, the Company and the INSURED will submit to the jurisdiction of the State of New York and will comply with all the requirements necessary to give such court jurisdiction. Nothing in this clause constitutes or should be understood to constitute a waiver of the Company's right to remove an action to a United States District Court.

L.  **Choice of Law** -- All matters arising hereunder including questions related to the validity interpretation, performance and enforcement of this Policy shall be determined in accordance with the law and practice of the State of New York (notwithstanding New York's conflicts of law rules).

M.  **Severability** -- Except with respect to Limits of Liability and any rights and duties assigned in this Policy to the FIRST NAMED INSURED, this insurance applies as if each INSURED were the only INSURED and separately to each INSURED against whom a CLAIM is made.

Any misrepresentation, act or omission that is in violation of a term, duty or condition under this Policy by one INSURED shall not by itself affect coverage for another INSURED under this Policy. However, this condition shall not apply to the INSURED who is a parent, subsidiary or affiliate of the INSURED which committed the misrepresentation, act or omission referenced above.

© 2009 X.L. America, Inc. All Rights Reserved.
May not be copied without permission.

# IN WITNESS

## INDIAN HARBOR INSURANCE COMPANY

REGULATORY OFFICE
505 EAGLEVIEW BOULEVARD, SUITE 100
DEPARTMENT: REGULATORY
EXTON, PA 19341-0636
PHONE: 800-688-1840

It is hereby agreed and understood that the following In Witness Clause supercedes any and all other In Witness clauses in this policy.

All other provisions remain unchanged.

IN WITNESS WHEREOF, the Company has caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

_____
Seraina Maag
President

_____
Toni Ann Perkins
Secretary

IL MP 9104 0211 IHIC

©2011 X.L. America, Inc. All rights reserved. May not be copied without permission.

JVAL 07/28/2011

ENDORSEMENT #001

This endorsement, effective 12:01 a.m., July 23, 2011 forms a part of Policy No. PEC000350311 issued to THE CLAREMONT COLLEGES by Indian Harbor Insurance Company.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

COVERED LOCATION SCHEDULE

This endorsement modifies insurance provided under the following:

POLLUTION AND REMEDIATION LEGAL LIABILITY POLICY

The INSURED and the Company agree to the following Policy change(s):

This Policy applies to a COVERED LOCATION listed below, but solely with respect to the liability of the INSURED.

COVERED LOCATION

001   AREA BOUNDED BY THE FOOTHILL BLVD. TO THE NORTH, CLAREMONT
       BLVD. TO THE EAST, 1ST STREET TO THE SOUTH INCLUDING THE
       AREA SOUTH OF THE 1ST STREET; AND HARVARD BLVD. TO THE WEST,
       CLAREMONT, CA 91711

002   555 WEST ARROW HIGHWAY
       CLAREMONT, CA  91711

003   517 IOLAB DRIVE
       CLAREMONT, CA  91711

004   535 IOLAB DRIVE
       CLAREMONT, CA  91711

005   AREA BOUNDED BY N. COLLEGE AVENUE TO THE WEST, FOOTHILL
       BLVD. TO THE SOUTH, CLAREMONT BLVD TO THE EAST, AND
       CLAREMONT GOLF COURSE TO THE NORTH;
       CLAREMONT, CA 91711

006   CLAREMONT GRADUATE UNIVERSITY
       1415, 1425, 1435, 1445,
       1455 N. COLLEGE AVE.
       CLAREMONT, CA  91711

ENDORSEMENT #001 (Cont'd.)

007    400 N CLAREMONT BLVD (FORMERLY KNOWN  AS 500 AND 550-552 N
       CLAREMONT BLVD)
       CLAREMONT, CA 91711


It is further agreed, that this Policy does not apply to LOSS, REMEDIATION EXPENSE, LEGAL
EXPENSE or any other coverages afford by endorsement attached to this Policy arising from any
POLLUTION CONDITION on, at, under or migrating from any location unless such location is specifically
endorsed onto this Policy as a COVERED LOCATION.   During the POLICY PERIOD, the FIRST NAMED
INSURED may request that a new location be added to this Policy by endorsement.  The Company shall
advise the FIRST NAMED INSURED of any information needed to consider the request.  If the Company
agrees to add this new location to the Policy, it will do so by issuing an endorsement adding the location
as a COVERED LOCATION.   Coverage for any such added location will not be effective until the
Company issues the endorsement adding the location as a COVERED LOCATION.  Locations added to
the Policy may be subject to additional premium or coverage restrictions.

All other terms and conditions remain the same.

ENDORSEMENT #002

This endorsement, effective 12:01 a.m., July 23, 2011 forms a part of Policy No. PEC000350311 issued to THE CLAREMONT COLLEGES by Indian Harbor Insurance Company.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## NON-OWNED DISPOSAL SITE(S)
## WITH RETROACTIVE DATE COVERAGE

This endorsement modifies insurance provided under the following:

POLLUTION AND REMEDIATION LEGAL LIABILITY POLICY

The INSURED and the Company agree to the following Policy change(s):

This Policy applies to the following Non-Owned Disposal Site(s) (NODS) listed below but solely with respect to the liability of the INSURED for the following coverages:

Coverage A – POLLUTION LEGAL LIABILITY

Coverage B – REMEDIATION LEGAL LIABILITY

resulting from any POLLUTION CONDITION

on, at, under or migrating from a NODS listed in the following NODS Schedule

NODS Schedule

| | NODS | NODS Retroactive Date(s) |
|---|---|---|
| 008 | NORTH STATE ENVIRONMENTAL INC. AND/OR | July 23, 2001 |
| 009 | NORTH STATE LABS, A CA CORP. 90 SOUTH SPRUCE AVENUE SUITE V PO BOX 2148 SOUTH SAN FRANCISCO, CA 94083 | July 23, 2001 |

It is further agreed that coverage provided in this Endorsement does not apply to the following:

(1)  any POLLUTION CONDITION that commenced or existed prior to the NODS Retroactive Date stated above including any subsequent POLLUTION CONDITION resulting therefrom; and

(2)  any NODS listed on a proposed or final State Superfund List and/or Federal National Priorities List prior to July 23, 2001.

PARL6 020a 0108                                        Page 1
©, 2008, XL America, Inc.
JVAL  07/28/2011

All other terms and conditions remain the same.

ENDORSEMENT #003

This endorsement, effective 12:01 a.m., July 23, 2011 forms a part of Policy No. PEC000350311 issued to THE CLAREMONT COLLEGES by Indian Harbor Insurance Company.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**LEAD-BASED PAINT AND ASBESTOS EXCLUSION AMENDMENT**
**COVERAGE FOR BODILY INJURY, PROPERTY DAMAGE AND RELATED LEGAL EXPENSE**

This endorsement modifies insurance provided under the following:

POLLUTION AND REMEDIATION LEGAL LIABILITY POLICY

The INSURED and the Company agree to the following Policy change(s):

Section IV. EXCLUSIONS, 11. Lead-Based Paint and Asbestos, is deleted in its entirety and replaced with the following:

11.     **Lead-Based Paint and Asbestos**
        based upon or arising out of the existence, required removal or abatement of lead-based paint or asbestos in any building or structure, including but not limited to products containing asbestos, asbestos fibers, asbestos dust, and asbestos containing materials.

        However, this exclusion does not apply to a CLAIM for BODILY INJURY or PROPERTY DAMAGE and related LEGAL EXPENSE resulting from lead-based paint or asbestos in any form, including but not limited to products containing asbestos, asbestos fibers, asbestos dust, and asbestos containing materials on, at under or migrating from a COVERED LOCATION.

All other terms and conditions remain the same.

PARL6 411b 0108
© 2008, XL America, Inc.
JVAL  07/28/2011

ENDORSEMENT #004

This endorsement, effective 12:01 a.m., July 23, 2011 forms a part of Policy No. PEC000350311 issued to THE CLAREMONT COLLEGES by Indian Harbor Insurance Company.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### UNDERGROUND STORAGE TANK(S) SCHEDULE

This endorsement modifies insurance provided under the following:

POLLUTION AND REMEDIATION LEGAL LIABILITY POLICY

The INSURED and the Company agree to the following Policy change(s):

Section IV. EXCLUSIONS, 12. Underground Storage Tank(s), is amended by the addition of the following:

12.    **Underground Storage Tank(s)**
       This exclusion does not apply to the UNDERGROUND STORAGE TANK(S) listed below:

| COVERED LOCATION | Tank Size (gallons) | Tank Contents |
|---|---|---|
| AREA BOUNDED BY THE FOOTHILL BLVD. TO THE NORTH, CLAREMONT BLVD. TO THE EAST, 1ST STREET TO THE SOUTH INCLUDING THE AREA SOUTH OF THE 1ST STREET; AND HARVARD BLVD. TO THE WEST, CLAREMONT, CA 91711 | 5,000 | GASOLINE |

All other terms and conditions remain the same.

ENDORSEMENT #009

This endorsement, effective 12:01 a.m., July 23, 2011 forms a part of Policy No. PEC000350311 issued to THE CLAREMONT COLLEGES by Indian Harbor Insurance Company.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### ADDITIONAL NAMED INSURED

This endorsement modifies insurance provided under the following:

POLLUTION AND REMEDIATION LEGAL LIABILITY POLICY

The INSURED and the Company agree to the following Policy change(s):

The following are included as an ADDITIONAL NAMED INSURED:

### ADDITIONAL NAMED INSURED

Claremont University Consortium, Claremont Graduate University, Claremont McKenna College, Harvey Mudd College, Pitzer College, Pomona College, Scripps College, Keck Graduate Institute of Applied Life Sciences, and all associated and affiliated colleges.

The Named Insureds' Board of Trustees, including any present or former trustees, and all of their bodies, boards, or subdivisions, officers, faculty members, visiting and exchange professors, teachers and scientists, administrators, volunteer workers, student teacher or student intern of any college named in this endorsement while acting within the scope of his/her duties to or on behalf of the college, and other employees while acting on behalf of the Named Insureds.

The Alumni Associates of the Named Insureds, the Associated Student Bodies of the Named Insureds, and other associated or affiliated organizations now or hereafter existing, and their officers while acting on behalf of the Insureds.

Pacific Basin Institute

Pitzer College Costa Rica, A California Nonprofit Public Entity

All other terms and conditions remain the same.

MANUS-US (01/10)

© 2010 X.L. America, Inc. All Rights Reserved.
May not be copied without permission.

JVAL 07/28/2011

ENDORSEMENT #010

This endorsement, effective 12:01 a.m., July 23, 2011 forms a part of Policy No. PEC000350311 issued to
THE CLAREMONT COLLEGES by Indian Harbor Insurance Company

SERVICE OF PROCESS

The Commissioner of Insurance of the State of California is hereby designated the true and lawful attorney of the
Company upon whom may be served all lawful process in any action, suit or proceeding arising out of this policy.
The Company further designates:

> John Oster
> 1990 North California Boulevard
> Suite 740
> Walnut Creek, CA  94596

as its agent in California to whom such process shall be forwarded by the Commissioner of Insurance.

For Illinois exposures, the Insurer further designates the Director of the Illinois Division of Insurance and his
successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit
or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of an Illinois
exposure and this contract of insurance.

All other terms and conditions of this policy remain unchanged.

———————————————————
(Authorized Representative)

XL-CASOP 11 10
JVAL  07/28/2011
© 2010 X.L. America, Inc. All Rights Reserved.
May not be copied without permission.

# EXHIBIT B

11-20

By Fax

| | For Court Use Only |
|---|---|
| Attorney or Party without Attorney:<br>MIKE MURTAIGH, ESQ., Bar #57874<br>MURTAUGH MEYER NELSON & TREGLIA LLP<br>2603 MAIN STREET<br>9TH FLOOR<br>IRVINE, CA 92614<br>Telephone No: (949) 794-4000       FAX No: (949) 794-4099 | **FILED**<br>LOS ANGELES SUPERIOR COURT<br>JUL 18 2013<br>JOHN A. CLARKE, CLERK<br>BY B. FONSECA, DEPUTY |

| Ref. No. or File No.: |
|---|

Attorney for: Plaintiff

Insert name of Court, and Judicial District and Branch Court:
 Los Angeles County Superior Court, Pomona Courthouse South

Plaintiff: PITZER COLLEGE

Defendant: INDIAN HARBOR INSURANCE COMPANY

| PROOF OF SERVICE<br>SUMMONS & COMPLAINT | Hearing Date: | Time: | Dept/Div: | Case Number:<br>KC066139 |
|---|---|---|---|---|

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of the SUMMONS; COMPLAINT; CIVIL CASE COVER SHEET; CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION; VOLUNTARY EFFICIENT LITIGATION STIPULATIONS; STIPULATION - EARLY ORGANIZATIONAL MEETING (BLANK); STIPULATION - DISCOVERY RESOLUTION (BLANK); STIPULATION AND ORDER - MOTIONS IN LIMINE (BLANK); INFORMAL DISCOVERY CONFERENCE (BLANK); ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE.

3. a. Party served:                                   Indian Harbor Insurance Company
   b. Person served:                                  John Oster, Agent for Service of Process

4. Address where the party was served:               1990 North California Boulevard
                                                      Suite 740
                                                      WALNUT CREEK, CA  94596

5. I served the party:
   b. by substituted service. On: Thu., Jul. 11, 2013 at: 11:50AM by leaving the copies with or in the presence of:
                                                      Chris Dangina, Secretary
   (1) (Business) a Person in charge at least 18 years of age apparently in charge of the office or usual place of business of the person served. I informed him or her of the general nature of the papers.
   (4) A declaration of mailing is attached.

6. The "Notice to the Person Served" (on the Summons) was completed as follows:
   on behalf of: Indian Harbor Insurance Company
   Under CCP 416.10 (corporation)

7. Person Who Served Papers:                          Recoverable Cost Per CCP 1033.5(a)(4)(B)
   a. Ben  Gates                                      d.  The Fee for Service was:     $149.60

   **First Legal**
   1138 Howard Street                                 e.  I am: (3)  registered California process server
   San Francisco, CA 94103                                (i)   Independent Contractor
   Telephone    (415) 626–3111                            (ii)  Registration No.:        756
   Fax          (415) 626–1331                            (iii) County:                  Contra Costa
   www.firstlegalnetwork.com

8. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

   Date: Wed, Jul. 17, 2013

                                                                              (Ben  Gates)

Judicial Council Form POS-010                    PROOF OF SERVICE
Rule 2.150.(a)&(b) Rev January 1, 2007           SUMMONS & COMPLAINT                          9617807:gg.mkmu.542956

| Attorney or Party without Attorney: MIKE MURTAIGH, ESQ., Bar #57874 MURTAUGH MEYER NELSON & TREGLIA LLP 2603 MAIN STREET 9TH FLOOR IRVINE, CA 92614 Telephone No: (949) 794-4000    FAX No: (949) 794-4099 | | | | For Court Use Only |
|---|---|---|---|---|
| Attorney for: Plaintiff | Ref. No or File No.: | | | |
| Insert name of Court, and Judicial District and Branch Court: Los Angeles County Superior Court, Pomona Courthouse South | | | | |
| Plaintiff: PITZER COLLEGE | | | | |
| Defendant: INDIAN HARBOR INSURANCE COMPANY | | | | |
| **PROOF OF SERVICE** **By Mail** | Hearing Date: | Time: | Dept/Div: | Case Number: KC066139 |

1. I am over the age of 18 and not a party to this action. I am employed in the county where the mailing occurred.

2. I served copies of the SUMMONS; COMPLAINT; CIVIL CASE COVER SHEET; CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION; VOLUNTARY EFFICIENT LITIGATION STIPULATIONS; STIPULATION - EARLY ORGANIZATIONAL MEETING (BLANK); STIPULATION - DISCOVERY RESOLUTION (BLANK); STIPULATION AND ORDER - MOTIONS IN LIMINE (BLANK); INFORMAL DISCOVERY CONFERENCE (BLANK); ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE.

3. By placing a true copy of each document in the United States mail, in a sealed envelope by **First Class** mail with postage prepaid as follows:

   a. Date of Mailing:          Thu., Jul. 11, 2013
   b. Place of Mailing:         SANTA ANA, CA 92701
   c. Addressed as follows:     Indian Harbor Insurance Company
                                John Oster, Agent
                                1990 North California Boulevard
                                Suite 740
                                WALNUT CREEK, CA 94596

4. I am readily familiar with the business practice for collection and processing of correspondence as deposited with the U.S. Postal Service on Thu., Jul. 11, 2013 in the ordinary course of business.

5. *Person Serving:*                                        Recoverable Cost Per CCP 1033.5(a)(4)(B)
   a. RON KUYER                          d. *The Fee for Service was:*   $149.60
   b. FIRST LEGAL SUPPORT SERVICES       e. I am: (3) registered California process server
      301 CIVIC CENTER DRIVE WEST            (i)    Independent Contractor
      SANTA ANA, CA 92701                    (ii)   *Registration No.:*      2529
   c. 714-541-1110                           (iii)  *County:*                Orange
                                             (iv)   *Expiration Date:*       Mon, Dec. 08, 2014

8. *I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

   *Date: Wed, Jul. 17, 2013*

PROOF OF SERVICE
By Mail

(RON KUYER)

*9817807;gg.mikmu.542956*

# EXHIBIT C

1   Max H. Stern (SBN 154424)
    Jessica E. La Londe (SBN 235744)
2   **DUANE MORRIS** LLP
    Spear Tower
3   One Market Plaza, Suite 2200
    San Francisco, CA  94105-1127
4   Telephone: +1 415 957 3000
    Fax: +1 415 957 3001
5   E-mail:    mhstern@duanemorris.com
               jelalonde@duanemorris.com
6
    Katherine Nichols (SBN 228893)
7   **DUANE MORRIS** LLP
    865 South Figueroa Street, Suite 3100
8   Los Angeles, CA  90017-5460
    Telephone: +1 213 689 7400
9   Fax: +1 213 689 7401
    E-mail:    knichols@duanemorris.com
10
11
    Attorneys for Defendant
12  INDIAN HARBOR INSURANCE COMPANY
13
14            SUPERIOR COURT OF THE STATE OF CALIFORNIA
15              FOR THE COUNTY OF LOS ANGELES
16                        East District
17  PITZER COLLEGE,                    Case No. KC066139 GI
18          Plaintiff,                 **INDIAN HARBOR INSURANCE
                                       COMPANY'S ANSWER TO
19       v.                            COMPLAINT FOR DECLARATORY
                                       RELIEF AND BREACH OF
20  INDIAN HARBOR INSURANCE COMPANY and CONTRACT**
    DOES 1-10,
21                                     Complaint Filed:    July 3, 2013
            Defendant.
22
23
24       Defendant Indian Harbor Insurance Company ("Indian Harbor"), through its attorneys,
25  answers Plaintiff Pitzer College's ("Pitzer") unverified Complaint for Declaratory Relief and Breach
26  of Contract ("Complaint") as follows:
27
28

---

INDIAN HARBOR INSURANCE COMPANY'S ANSWER TO COMPLAINT FOR DECLARATORY RELIEF AND
BREACH OF CONTRACT; CASE NO. KC06    GI

## GENERAL DENIAL

1.      Pursuant to California Code of Civil Procedure § 431.30(d), Defendant Indian Harbor generally denies each and every allegation contained in Plaintiff Pitzer's unverified Complaint, and further denies that Pitzer is entitled to any relief against Indian Harbor by virtue of its Complaint.

2.      The Complaint does not describe the events and claims therein alleged with sufficient particularity to enable Indian Harbor to determine all defenses which may exist to such events and claims (including defenses based upon the terms, conditions, limitations or exclusions contained in or incorporated in the Indian Harbor insurance at issue).  Indian Harbor therefore reserves its rights to assert all additional defenses that may pertain to the unverified Complaint once the nature of such claims is made available, including all applicable defenses pleaded by any other defendants in this action.

3.      Defendant Indian Harbor, without conceding that it has the burden of proof as to any affirmative defense, alleges the following as further and separate affirmative defenses:

### FIRST AFFIRMATIVE DEFENSE

#### (Failure to State Cause of Action)

4.      The Complaint, and the purported claims asserted therein against Indian Harbor, is barred to the extent that it fails to state facts sufficient to constitute a cause of action upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

#### (Policy Terms, Definitions, Exclusions, Conditions and Limitations)

5.      Pitzer's claims against Indian Harbor are barred or limited to the extent they are barred or limited by the terms, definitions, exclusions, conditions, and limitations contained in the policy of insurance allegedly issued by Indian Harbor to Pitzer.

### THIRD AFFIRMATIVE DEFENSE

#### (No Duty Owed)

6.      Pitzer's claims against Indian Harbor are barred or limited because Indian Harbor has no obligations to Pitzer under the policy.

## FOURTH AFFIRMATIVE DEFENSE

### (Failure to Give Timely Notice)

7.     Pitzer's claims against Indian Harbor are barred or limited because Pitzer failed to provide Indian Harbor with timely notice of the relevant claims against Pitzer, in violation of the terms of the insurance policy.

## FIFTH AFFIRMATIVE DEFENSE

### (No Notice)

8.     Pitzer's claims against Indian Harbor are barred or limited to the extent Pitzer failed to provide notice to Indian Harbor of all relevant claims against Pitzer.

## SIXTH AFFIRMATIVE DEFENSE

### (Lack of Consent)

9.     Pitzer's claims against Indian Harbor are barred or limited because Pitzer failed to obtain Indian Harbor's consent prior to incurring the amounts claimed in this action, in violation of the terms of the insurance policy.

## SEVENTH AFFIRMATIVE DEFENSE

### (Voluntary Settlement or Payments)

10.     Pitzer's claims against Indian Harbor are barred or limited to the extent that Pitzer voluntarily made any payments, assumed any obligation, or incurred any expense, without the consent of Indian Harbor.

## EIGHTH AFFIRMATIVE DEFENSE

### (No Proper Reporting)

11.     Pitzer's claims against Indian Harbor are barred or limited to the extent Pitzer failed to properly report relevant claims against Pitzer or pollution conditions to Indian Harbor.

## NINTH AFFIRMATIVE DEFENSE

### (Failure to Cooperate)

12.     Pitzer's claims against Indian Harbor are barred or limited to the extent Pitzer failed to cooperate with Indian Harbor with respect to the relevant claims against Pitzer, as required under the Indian Harbor policy.

3

## TENTH AFFIRMATIVE DEFENSE

### (Failure to Perform Policy Obligations)

13.     Pitzer's claims against Indian Harbor are barred or limited to the extent Pitzer has failed to perform policy obligations.

## ELEVENTH AFFIRMATIVE DEFENSE

### (No "Loss" or "Remediation Expense" Resulting From a "Pollution Condition")

14.     Pitzer's claims against Indian Harbor are barred or limited to the extent there is no "loss" or "remediation expense" resulting from a "pollution condition," as those terms are defined by the Indian Harbor policy.

## TWELFTH AFFIRMATIVE DEFENSE

### (Known Condition or Non-Disclosed Condition)

15.     Pitzer's claims against Indian Harbor are barred or limited to the extent they arise from a "known condition" or the non-disclosed condition exclusion of the policy applies.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Non-Compliance Exclusion)

16.     Pitzer's claims against Indian Harbor are barred or limited to the extent the non-compliance exclusion of the policy applies.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Claim First Made or Pollution Condition First Discovered Before Policy Period)

17.     Pitzer's claims against Indian Harbor are barred or limited to the extent that the claims were not "first made" against Pitzer or the pollution condition was not "first discovered" during the policy period of the insurance policy.

## FIFTEENTH AFFIRMATIVE DEFENSE

### (Covered Location)

18.     Pitzer's claims against Indian Harbor are barred or limited to the extent that any "pollution condition" was not on, at, under or migrating from a "covered location."

4

### SIXTEENTH AFFIRMATIVE DEFENSE

**(Lead-Based Paint and Asbestos Exclusion)**

19.     Pitzer's claims against Indian Harbor are barred or limited to the extent the Lead-Based Paint and Asbestos Exclusion of the policy applies.

### SEVENTEENTH AFFIRMATIVE DEFENSE

**(Contamination Exclusion)**

20.     Pitzer's claims against Indian Harbor are barred or limited to the extent the Contamination Exclusion of the policy applies.

### EIGHTEENTH AFFIRMATIVE DEFENSE

**(Prejudice to Rights)**

21.     Pitzer's claims against Indian Harbor are barred or limited to the extent that Pitzer has in any way prejudiced Indian Harbor's rights under the policy.

### NINETEENTH AFFIRMATIVE DEFENSE

**(Failure to Mitigate)**

22.     Pitzer's claims against Indian Harbor are barred or limited to the extent Pitzer has failed to mitigate, minimize, or avoid some or all of the alleged injury, damage, loss, or costs referred to in the Complaint.

### TWENTIETH AFFIRMATIVE DEFENSE

**(Unreasonable Settlement or Payments)**

23.     Pitzer's claims against Indian Harbor are barred or limited to the extent Pitzer incurs or incurred unreasonable or inappropriate costs or obligations with respect to the subject claims or pollution conditions.

### TWENTY-FIRST AFFIRMATIVE DEFENSE

**(Concealment or Misrepresentation)**

24.     Pitzer's claims against Indian Harbor are barred or limited to the extent Pitzer concealed any information or made any misrepresentations in the application for insurance.

5

INDIAN HARBOR INSURANCE COMPANY'S ANSWER TO COMPLAINT FOR DECLARATORY RELIEF AND BREACH OF CONTRACT; CASE No. KC066139 GI

## TWENTY-SECOND AFFIRMATIVE DEFENSE

### (New York Law)

25.     The Complaint, and the purported claims asserted therein against Indian Harbor, is barred because New York law applies to this dispute by virtue of the Choice of Law clause in the insurance policy between Indian Harbor and Pitzer, designating New York law to govern this dispute.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

### (No Bad Faith Because No Coverage)

26.     Pitzer's claims against Indian Harbor are barred or limited because there is no coverage under the policy allegedly issued to Pitzer by Indian Harbor and, as such, Pitzer's bad faith claim against Indian Harbor necessarily fails.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

### (Arguable Basis, Genuine Dispute, or Genuine Issue)

27.     Pitzer's claims against Indian Harbor are barred or limited because the coverage issue in this case involves at least an arguable basis, a genuine dispute, and/or a genuine issue regarding Indian Harbor's coverage position.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

### (Reasonableness and Good Faith)

28.     Pitzer's claims against Indian Harbor are barred or limited because Indian Harbor's actions were neither unreasonable nor without proper cause, and at all relevant times Indian Harbor acted reasonably and in good faith.  Accordingly, Pitzer's allegations of bad faith are barred, in whole or in part.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

### (Self-Insured Retention)

29.     Indian Harbor has no obligation with respect to Pitzer's claims until each and every applicable self-insured retention is appropriately satisfied.  Any amounts allegedly owed or damages awarded against Indian Harbor are subject to the self-insured retention(s) applicable under the policy.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

### (Policy Limits)

30.     Any damages awarded against Indian Harbor are subject to the policy limits of the Indian Harbor policy.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

### (Other Insurance or Sources of Funds)

31.     Coverage under the insurance issued by Indian Harbor may be barred or limited, in whole or in part, to the extent there is other insurance or other sources of funds available to Pitzer with respect to the claims against Pitzer or to the extent other insurance or other sources of funds actually paid for the claims against Pitzer.

## TWENTY-NINTH AFFIRMATIVE DEFENSE

### (Equitable Indemnity/Contribution/Subrogation)

32.     Pitzer's claims may be barred or limited to the extent that it is not entitled to any recovery from Indian Harbor because another entity is responsible for the claims under the doctrines of equitable indemnity, contribution and/or subrogation.

## THIRTIETH AFFIRMATIVE DEFENSE

### (Double Recovery/Offset/Setoff)

33.     Pitzer's claims against Indian Harbor are barred or limited to the extent any damages awarded to Pitzer against Indian Harbor would constitute a double recovery to Pitzer and/or Indian Harbor is entitled to an offset or setoff of any damages awarded to Pitzer by amounts Pitzer received from third parties that compensated it in part or whole for the amounts claimed herein.

## THIRTY-FIRST AFFIRMATIVE DEFENSE

### (Equitable Defenses)

34.     Pitzer's claims against Indian Harbor may be barred or limited by the equitable doctrines of waiver, estoppel, and unclean hands.

## THIRTY-SECOND AFFIRMATIVE DEFENSE

### (Statute of Limitations or Laches)

35.     Pitzer's claims against Indian Harbor are barred or limited to the extent that any statute of limitations is applicable or any of Pitzer's claims are barred by the doctrine of laches.

## THIRTY-THIRD AFFIRMATIVE DEFENSE

### (Reservation of Rights)

36.     Indian Harbor specifically reserves its rights to amend its answer and affirmative defenses and/or bring counter claims and/or third-party actions as may be determined by further investigation and discovery.

WHEREFORE, Indian Harbor prays that judgment be entered against Plaintiff as follows:

1.     Dismissing with prejudice the Complaint against Indian Harbor in its entirety and adjudicating that Plaintiff is owed nothing from Indian Harbor;

2.     Declaring that Indian Harbor has no obligation to pay or indemnify any sum or sums to Plaintiff;

3.     Declaring that to the extent Indian Harbor has any obligation to Plaintiff, such duty is limited by and subject to the terms, conditions, exclusions, limits of liability, and other provisions contained in or incorporated into the applicable policy;

4.     That this Court enter judgment declaring that Plaintiff does not have a valid cause of action against Indian Harbor; and

5.     Awarding Indian Harbor costs, attorneys' fees, and such other and further relief as the Court deems just and proper.

Dated: August 9, 2013                                        **DUANE MORRIS LLP**

By: _____
Max H. Stern
Jessica E. La Londe
Katherine Nichols
Attorneys for Defendant
INDIAN HARBOR INSURANCE

DM1/4065314

8

INDIAN HARBOR INSURANCE COMPANY'S ANSWER TO COMPLAINT FOR DECLARATORY RELIEF AND BREACH OF CONTRACT; CASE NO. KC066139 GI

**PROOF OF SERVICE**

*Pitzer College v. Indian Harbor Insurance Company, et al.*
Los Angeles County Superior Court No. KC066139 GI

      I am a resident of the state of California, I am over the age of 18 years, and I am not a party to this lawsuit.  I am an employee of Duane Morris LLP and my business address is Spear Tower, One Market Plaza, Suite 2200, San Francisco, California 94105.  I am readily familiar with this firm's practices for collecting and processing correspondence for mailing with the United States Postal Service and for transmitting documents by FedEx, fax, email, messenger and other modes.  On the date stated below, I served the following documents:

**INDIAN HARBOR INSURANCE COMPANY'S ANSWER TO COMPLAINT FOR DECLARATORY RELIEF AND BREACH OF CONTRACT**

| **X** | <u>BY U.S. MAIL</u>: ☒ I enclosed the documents in a sealed envelope or package addressed to the person(s) set forth below, and placed the envelope for collection and mailing following our ordinary business practices, which are that on the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in San Francisco, California, in a sealed envelope with postage fully prepaid.  <u>OR</u><br>☐ I enclosed the documents in a sealed envelope or package addressed to the person(s) set forth below, and deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid. |
|---|---|

| | |
|---|---|
| Michael J. Murtaugh<br>Lawrence J. DiPinto<br>Murtaugh Meyer Nelson & Treglia LLP<br>2603 Main Street, 9th Floor<br>Irvine, CA 92614-6232<br>Tel: (949) 794-4000<br>Fax: (949) 794-4099<br>Email:  mmurtaugh@mmnt.com<br>        ldipinto@mmnt.com | Attorneys for Plaintiff<br>PITZER COLLEGE |

      I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: August 9, 2013

                          _Jennifer Coogan_

INDIAN HARBOR INSURANCE COMPANY'S ANSWER TO COMPLAINT FOR DECLARATORY RELIEF AND BREACH OF CONTRACT; CASE NO. KC066139 GI

1

## CERTIFICATE OF SERVICE

2

*Pitzer College v. Indian Harbor Insurance Company, et al.*
U.S.D.C. for the C.D. of CA Case No.

3

4

I am a resident of the state of California, I am over the age of 18 years, and I am not a party to this lawsuit. I am an employee of Duane Morris LLP and my business address is Spear Tower, One Market Plaza, Suite 2200, San Francisco, California 94105. I am readily familiar with this firm's practices for collecting and processing correspondence for mailing with the United States Postal Service and for transmitting documents by FedEx, fax, email, messenger and other modes. On the date stated below, I served the following documents:

5

6

7

### NOTICE OF REMOVAL

8

9

| __X__ | BY U.S. MAIL: ☒ I enclosed the documents in a sealed envelope or package addressed to the person(s) set forth below, and placed the envelope for collection and mailing following our ordinary business practices, which are that on the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in San Francisco, California, in a sealed envelope with postage fully prepaid. OR ☐ I enclosed the documents in a sealed envelope or package addressed to the person(s) set forth below, and deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid. |
|---|---|

10

11

12

13

14

| Michael J. Murtaugh<br>Lawrence J. DiPinto<br>Murtaugh Meyer Nelson & Treglia LLP<br>2603 Main Street, 9th Floor<br>Irvine, CA 92614-6232<br>Tel: (949) 794-4000<br>Fax: (949) 794-4099<br>Email: mmurtaugh@mmnt.com<br>   ldipinto@mmnt.com | Attorneys for Plaintiff<br>PITZER COLLEGE |
|---|---|

15

16

17

18

19

20

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

21

22

23

Dated: August 12, 2013            *[signature]*

Trina C. Morgan

24

25

26

27

28

1

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____ George H. Wu _____ and the assigned Magistrate Judge is _____ Charles F. Eick _____ .

The case number on all documents filed with the Court should read as follows:

## 2:13-CV-5863-GW (Ex)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

_____
August 12, 2013
Date

By  MDAVIS _____
Deputy Clerk

---

## NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

☐ Western Division
312 N. Spring Street, G-8
Los Angeles, CA 90012

☐ Southern Division
411 West Fourth St., Ste 1053
Santa Ana, CA 92701

☐ Eastern Division
3470 Twelfth Street, Room 134
Riverside, CA 92501

**Failure to file at the proper location will result in your documents being returned to you.**

---

CV-18 (08/13)                     NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

UNITED S...ES DISTRICT COURT, CENTRAL DISTRICT O... ...ALIFORNIA
CIVIL COVER SHEET

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )
Pitzer College

**DEFENDANTS** ( Check box if you are representing yourself ☐ )
Indian Harbor Insurance Company

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Michael J. Murtaugh / Lawrence J. DiPinto
Murtaugh Meyer Nelson & Treglia LLP
2603 Main Street, 9th Floor
Irvine, CA 92614-6232
Telephone: (949) 794-4000

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Max H. Stern / Jessica E. La Londe / Katherine Nichols
Duane Morris LLP
Spear Tower, One Market Plaza, Suite 2200
San Francisco, CA 94105-1127
Telephone: (415) 957-3000

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff
☐ 3. Federal Question (U.S. Government Not a Party)
☐ 2. U.S. Government Defendant
☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1. Original Proceeding
☒ 2. Removed from State Court
☐ 3. Remanded from Appellate Court
☐ 4. Reinstated or Reopened
☐ 5. Transferred from Another District (Specify)
☐ 6. Multi- District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No    (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No    ☒ **MONEY DEMANDED IN COMPLAINT: $** 1,900,000.00

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Diversity suit arising out of insurance contract (28 U.S.C. 1332).

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☒ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/ Accomodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

CV13-05863

FOR OFFICE USE ONLY:  Case Number: _____

AFTER COMPLETING PAGE 1 OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED ON PAGE 2.

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES**: Has this action been previously filed in this court and dismissed, remanded or closed?   ☒ NO   ☐ YES

If yes, list case number(s): _____

**VIII(b). RELATED CASES**: Have any cases been previously filed in this court that are related to the present case?   ☒ NO   ☐ YES

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE**: (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.

☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.

☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District, State, if other than California; or Foreign Country |
|---|---|
| | Connecticut and North Dakota |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**NOTE: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

*Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
**Note**: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR SELF-REPRESENTED LITIGANT):** _Max H. Stern_   DATE: August 12, 2013

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |

American LegalNet, Inc.
www.FormsWorkFlow.com